May it please the Court, my name is Sanford Schatz and I'm representing Appellant Mission Hen LLC. What I want to focus on is portions of the three arguments we raised concerning that for a Chapter 13, the anti-modification protections applied to a purchase money loan secured by a debtors residence, and that the Chapter 13 plan was not feasible. It's not my intent to review what was in the briefs, but pick one or two highlights to look at in part some of the theory and philosophy to help understand what happens in these cases. Before I begin my prepared remarks, I wanted to ask if the Court would be willing to share its tentative thoughts so I can focus on what I'm going to say. We don't really have collective tentative thoughts. We haven't voted or anything. We've talked about it, but why don't you go ahead with your presentation, please. Okay, thank you. With respect to our first point, that the debtors aren't eligible for a Chapter 13, in the Ninth Circuit, which is binding at least on this party, an eligibility to whether a debtor qualifies for a Chapter 13 case is made at the time that the petition is filed and the schedules are filed. And in this particular case, based on the schedules filed with the listing of the secured and unsecured debts, either the secured debts total listed make the borrower ineligible under the agreed-upon secured number, $1,257,000, or if the second position claim is divided as suggested by the borrower, then the unsecured debts are too big for Chapter 13, and therefore the Chapter 13 case should be dismissed and or converted to a 7 or an 11. That's where the Ninth Circuit comes. There's one word they used in addition, and that is they say that normally eligibility should be based on the originally filed schedules, checking only for good faith. So there is a bit of an escape hatch or wiggle room here, and I think Mr. Smith may try to convince us that this was not a normal situation, and he may say something like, by the time the eligibility issue really got flushed out, the court had or was about to value the property, and based on the value that the court actually assessed, the debtors were eligible. And I think he's going to say, why should we just ignore the fact that the court did eventually decide the valuation question in a way that made the debtors eligible? Related to that, maybe just to clarify the question for me, is the eligibility issue, as I understand it, was not even raised by any of the parties until after the court had made those valuations. Is that correct? Okay, forgive me now. There were several questions, so I don't want to ignore anybody who will prioritize and cause prejudice. Give priority to my right. Okay, so the Ninth Circuit has said that the determination is made at the time the petition is filed and the schedules are filed, and yes, there's wiggle room, and getting to the theory and philosophy behind that, if the case is Chapter 13 dependent or eligible, then the process can go through and we preserve judicial resources and do the work. And if at the outset the case is not Chapter 13 eligible, then we don't want to waste all of that time, and in this case, the challenge should have been made, and the challenge belongs to the Chapter 13 trustee. That is, my client doesn't have to make that. No, I think it does belong to creditors as well. I think creditors can raise the eligibility point as well. My client raised the eligibility at the time it reviewed the plan and set it forward, and in fact, did raise it in their early pleadings. They didn't file a motion to dismiss in the very, very beginning, but they filed it when they filed their first petition. So I hope that actually directly addressed all of your questions. Well, my memory is that that was first raised, the objection to the third amended plan, not the original plan. Yeah, that's my recollection, too. And by that point, the confirmation, I'm not sure the evaluation had been done by that point or was about to be done, but I think the point we're both kind of making is that the eligibility point didn't get raised by anybody until the case was down the road a little bit, at least. I will unfortunately agree with that. Yes, that is what the record is. And it did not arise in part prior to that time, because given the valuations, the Chapter 13 should not have gone forward, or that the valuations were made and eventually not disputed and they're not subject to the appeal. But given the valuations, the court worked the valuation in a way that after the fact and after the work had been done, then it conforms with the Chapter 13. Under the suggestion that we're offering, if the decision was made up front and it qualifies, the case qualifies under Chapter 13, if it later proves not to qualify, then the plan isn't confirmed as opposed to just dismissing the case and the work's not wasted. Whereas in this particular case, we should not have gone that far and the plan shouldn't have even been put forward or should not have been considered. But let me go to my second point. The second point is the anti-modification provisions. I am certain that this panel, as either bankruptcy practitioners or bankruptcy judges, has had the pleasure of working through 1322C2. And you're smiling, so I don't need to necessarily... I have now. Oh. I don't think I did before. Welcome to the world of secured mortgage debt. It's a wonderful world. It's how most of us buy our houses. And the theory behind the statutes and then eventually as amended is in order to encourage loans for purchase money for people to buy houses, we want the lenders to be able to be paid back. But there's this carve-out in C2 for the, call them short-term or soon-to-mature loans. And that's the focus of this case, right? So that is. So if the statute says you can't alter the mortgage debt unless, and then the carve-out for C2 loans is not if the payments are to continue past the Chapter 13 plan, say five years. And that's because the mortgage debt can't be affected. The payments that are made, the lender is entitled to get paid back all of the principal they loaned out. And the carve-out for the short-term debt is consistent with the theory behind this that the lender is entitled to be paid back. But instead of paying you back over the three years remaining, two years remaining, four years remaining, we in bankruptcy have jurisdiction over the borrower's debts and the borrower's payments. And we will assure you lender the ability to be paid back. But we want to help the borrower during our jurisdiction over the borrower's case within a three-year plan or a five-year plan. And we have that ability. So we're going to, for example, instead of amortizing your loan over the remaining three years on a 30-year loan, we're now going to make it a 38-year loan and amortize it over the remaining five years, reducing the payment. You lender will still be paid back all of the money you loaned, but we'll help the borrower with lower payments. But couldn't that be accomplished even without C-2 under the provision that allows a plan to provide for cure and maintenance of payments? In other words, debtor says, I'm going to default. I've got this balloon payment due in two years. I know I'm going to default when that balloon payment comes due. I propose to cure that by making additional payments over the following three years. But couldn't you accomplish that under 1322b-5, I think it is? I have that. I can look at it. I may have the wrong subsection, but... Let's go with the right subsection, whatever it is, and we'll say you have the right one. What you've done is said, okay, we're still going to pay you back the money that's owed. We're not going to affect your claim. We're just going to affect how it's repaid through the payments, and I'm saying, yes, that can be done. Well, my point is you could accomplish that without C-2 being in the statute at all by relying on the cure and maintenance provision, which I think is B-5, but it is whatever it is. It's somewhere in B. Okay. See what I'm saying? But the C-2 says if more than five years is owed, you can't affect it. Right. But if less than five years is owed, we're still going to make sure the lender is paid back everything. We're not going to impact the claim. We're not going to impact the amount owed. We're just going to affect how it's amortized and how it's paid. We're going to affect the payment amount. I think the point I'm trying to make is, or the argument I'm trying to make, or the argument that Mr. Smith will make that I'm trying to anticipate is that you could accomplish the same result under B-5, the cure and modification provision, even if C-2 didn't exist. Therefore, your interpretation of C-2 makes C-2 surplusage. Then I'm going to have to look at that section because I didn't look at the, you think it's 1322B-5? Well, let me find out. Yes. I guessed right. B-5, notwithstanding paragraph two, providing for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured or secured claim on which the last payment is due after the date on which the final payment under the plan is due. Okay, so it's that latter qualification, the last payment due after that. So that goes beyond the plan. Right, I see. And we're talking now about before the plan, and if I as a lender have my loan due in two years, and I know it's a five-year plan, by God, I want to be paid back in two years. We now have a section that says, well, you'll be paid back in full, but it won't happen in two years. We want to help the debtor, and it's going to be over five years. You're getting close to your four minutes, so that's a lovely, plausible story. Do you want to address some of the reasons why other courts have concluded differently? Either other courts haven't looked at it this way, and not every lender's counsel makes all of the arguments. We've seen laws change over it. Or in those cases, for example, the Fourth Circuit and the Eleventh Circuit, I don't want to say they're— The Fourth Circuit, which changed its mind, right? The Fourth Circuit did change its mind. And I don't have a good explanation for you for that. We think that— Other than it isn't binding. The explanation is it isn't binding. I'd like to tell you it's not binding. I'm not even sure it's persuasive, but yeah, it's getting attention, and it's there. And my last point was on plan feasibility. We have at least two cases talking about third-party contributions to the plan, and there are four categories, typically, to see if the feasibility is good. Two of them aren't even addressed in the proposal. There is a relationship and motivation between the debtor's mother and the debtor, but no other facts to support it. Not only no long and undisputed history of contributions, there are no facts to show a history of contributions. So is this clearly erroneous, just so I've got it right? It is absolutely clearly erroneous and unsupported by any evidence. All right. And this is not something to which we should defer to the Bankruptcy Court for any reason? Whether you defer or not, in order to defer, there has to be some kind of findings, and there are no findings. So not only clearly erroneous— Well, no, there are findings. There just aren't the ones you like. There were actually no findings. It was the form order saying we can do the plan, but there was no evidence to support those findings. I will disagree with you about that, but you go ahead. Okay. Okay, well, you're inside three minutes now, so if you want to reserve, you can. Yes, please. Go ahead. Okay. Thank you. Mr. Smith, go ahead, please. Good morning, Your Honors. Michael Smith for Pelley. To address the first issue, the eligibility under 109E, whether you look at the original file schedules, I'm glad Your Honor pointed out the word normally. So it doesn't mean it always has to go that way. Essentially, what the court would normally do by looking at the file schedules is make, I guess in their heads, a determination under 506A of secured and unsecured portion of a loan or of a claim. But where there is not certainty, the court can look outside the schedules, and here there's clearly not certainty. The creditor themselves contested the valuation motion. But I guess I think the point that the creditor is making here is that if you look at your schedules, you take the valuation that the debtor has ascribed to the property, the debtors are ineligible, right? Just taking those numbers straight off the face of the schedules. Isn't that true? Off the original? Yes, I can't contest that. If you add up those numbers, that is correct, Your Honor. But what we shouldn't do is, it would seem, it wouldn't make any sense to simply go off that, especially after we got to the point of an evidentiary hearing where the court itself determined the value to the property. It would seem very unfair. And again, the reason for the, oddly enough, for the evidentiary hearing was the creditor themselves contesting the veracity of our schedules. You know, we listed a schedule, they said that is incorrect. So as for that, there was no absolute certainty and the court did require an evidentiary hearing in order to determine the number. And that number that they came up with at the end of the day, that is the truth. It is more truthful than what was originally put in the schedules. As to the second point, whether you can modify their claim, 1322C2, that encompasses short-term mortgages, mortgages that almost matured, mortgages with balloon payments. I don't believe these are mortgages that Congress necessarily wants to encourage, wants to encourage people, hey, hurry up and get a mortgage that's going to balloon in five years and lose your house. So I don't necessarily think these are the type of mortgages that Nobleman was talking about. But it's not really limited to that, is it? Because let's suppose debtor had a 30-year mortgage and they filed bankruptcy in the 28th year. Right. Wouldn't C2 apply to that even without the balloon payment, just to a normally maturing or just ending loan? And that is correct, Your Honor. And to that, I would argue that, well, if you only have two more years on the loan, the mortgage company has already received its lion's share of interest. There's very little loss that that lender is going to give. I doubt that little tiny loss in the big scheme of things is going to discourage Jamie Dimon from giving out a loan. Well, it may be, too, that what Congress did was a little ham-fisted. In thinking about this as a short-term problem, they might have thought about it the way you institutions who are going to make 20-, 30-year loans and the kind of folks who make shorter-term loans who perhaps don't do it at the level of the institutions and do not affect liquidity in the same way. You know, if they did that, then, frankly, as Judge Ferris pointed out and as the creditor would point out, what they did was at best kind of ham-fisted because it certainly doesn't prevent the very scenario Judge Ferris was talking about. So that's, I mean, I think that's, you know, you can take that a couple of different ways in my view. My question is, when we're talking about, since we were invited to think philosophically about this by the creditor, you know, 109E is a prohibition, you know, thou mayest not be in Chapter 13 be gone. And you know, you could argue that in a situation where, well, let's say hypothetically the case were dismissed, what would you have done? Would you have refiled it in five minutes with different schedules? Exactly, Your Honor. Okay. At that point, the exemptions would have, or the 109E limits actually increased. Well, that's a whole other, you know, that's serendipitous. But I guess I would want to think a bit about how strict and how, you know, definitive the 109E remedy is, which is just the bankruptcy case is gone in a situation where it had progressed to a certain point where there had been some factual findings that, I mean, you know, I'm not saying anything that's indicative of an intent to hide the ball. You know, there was an assertion that so much goes in one column, so much goes in the other. When quote, fixed by the bankruptcy court, the case works. That's the gist of it, Your Honor. All right. So I have to, we'd have to conclude that the intent of Congress was to basically prohibit somebody from filing, from proceeding with a Chapter 13 case in a situation where the problem were fixable, right? Yes, Your Honor. Okay. And to move on to the last, the feasibility, the court found feasibility for three reasons. One, the trustee who was very much involved in the case advised the court that the plan was feasible. All plan payments were current at the time of confirmation, which was, mind you, 11 months into the case. All post-petition mortgage payments were current, again, 11 months into the case. The second reason was that the creditor failed to file an evidentiary objection. They did include some objection or mentioned the objection in one of their, one of their objections to the, or multiple objections to the plans, however, they didn't follow, I believe it's local bankruptcy rule 9013-1I2, where they're required to file and serve a separate document, sign the specific federal rule upon which it was based and file it concurrently with the response. So they didn't procedurally follow the rules in order to get the evidentiary objection. But let's, let me take the creditor side here for a second, okay? If this is a failure by the court to make findings, I mean, that's an error, right? So whether they, I mean, if the court had the obligation to make those findings and it didn't do it, if they're, if they're implicit somehow, one can argue they are, but if it simply didn't do it, that is an error, right? And we're here to address errors, correct? Correct. But the fact is, it's, it's, our declaration is what they should have objected to. That was, it was presented to the court. It did indicate a personal relationship. It did indicate the willingness to commit the funds. It did include a copy of the closing statement, which showed the funds that mother of the appellee was, was, was going to receive and, and use to help contribute to the plan. So this was all before the court. Now the creditor wished to object to it, but they didn't do so in the proper fashion in order to force the court to, to, to, to not admit the evidence. Well, there's evidence presented, but, but was there a finding, you know, did the judge after seeing that evidence make a finding? I believe so in the, at least in the, in the transcripts, he, he did find it was sufficient and I'll admit he did say I'll be not the best, but sufficient enough to prove to the court that the plan was feasible along with the trustee's support and the fact that the debtor was in fact current. So that's the funny thing about this case is it's at the end of the day, the plan payment was current, the mortgage payment, post-petition mortgage payments were current, the value of the house, which was determined by the court, showed that they were within the limits of 109E. So it's kind of odd that like it's, everything of this case, everything about this case factually at the end of the day was, was, was good. It showed the plan should be confirmed and, and, and it backed up the reasoning why the court did confirm the case. And it's, it's kind of odd to look back in hindsight and say, well, you know, before we actually figured all this out, we should have just dismissed it. Even though in reality it was a confirmable plan. All right, I've got, unless you have something further, I don't think we have any more questions for you. Anything else you'd like to add? Nothing further. Thank you for hearing me out and I hope your honors get enough time for a good lunch. Thanks. Thanks for that. Thank you. Mr. Schatz. Thank you. As to the first point for eligibility, the Debtors' Council did acknowledge that based on the schedules, the case is not eligible for a Chapter 13. The board has to decide whether the Ninth Circuit law applies not just to us, but for the case. On the anti-deficiency argument, this is not a balloon loan, a short-term loan. This was a regular second position loan to help the borrower purchase the home. And while the lender has made its share of interest, the lender wants to be fully repaid and get its money back. Not that it matters. How long was the maturity period originally? It's either 15 or 20 years.  Okay. Thank you. Thank you. Thank you. And then, as to the feasibility argument, there was no pointing to evidence. There were objections. The decision by the court was unsupported by evidence, clearly erroneous. And that's all I wanted to share. Thank you. All right. Thank you very much. Thank you. The matter is submitted. You'll get a decision in due course. Thank you.
judges: FARIS, LAFFERTY, and CORBIT